**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff(s),**    **CASE NUMBER: 09-20224
                 HONORABLE VICTORIA A. ROBERTS**

**v.**

**D-7 NEIL CHAPPLE,**

    **Defendant(s).**
_____/

**ORDER**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

This matter is before the Court on Defendant Neil Chapple's "Amended Motion to Suppress – July 3, 2008." (Doc. #107). Chapple asks the Court to suppress statements he made during an unlawful arrest, as well as the OxyContin pills, cough syrup with codeine, and firearm seized during the arrest.

On November 13, 2009, the Court referred this motion to Magistrate Judge Virginia A. Morgan for a Report and Recommendation ("R&R"). The Magistrate Judge held an evidentiary hearing on January 12, 2010 and January 15, 2010. On February 26, 2010, the Magistrate Judge filed an R&R, recommending that the Court DENY Chapple's motion to suppress.

Chapple filed objections on March 12, 2010, and a Supplemental Brief on June 17, 2010. The Government responded on June 29, 2010.

For the reasons stated, the Magistrate Judge's R&R is **ADOPTED**, and Chapple's motion is **DENIED**.

1

## II. BACKGROUND

### A. Traffic Stop

On July 3, 2008, Chapple and his friend, Mollie Shause, were in a rental car, traveling southbound on I-75 in Monroe County.

At 6:56 p.m., Michigan State Trooper Robert Prause initiated a traffic stop for tailgating. Chapple denies he was tailgating. He says the driver of the car in front of him slammed on her brakes after she saw Trooper Prause's car, so he slammed on his.

During the traffic stop, Chapple told Trooper Prause he picked Shause up from Kentucky to go to his family reunion in Detroit, but he did not want to go, so he and Shause were headed back to Kentucky to pick up Shause's sister before going to Cedar Point for the weekend.

Trooper Prause gave Chapple a verbal warning, but then told him "You're good to go." This is at 7:03 p.m. At this point, the traffic stop ended, but Chapple and Trooper Prause continued to talk about Chapple's vacation in Brazil.

### B. Questioning of Mollie Shause

At 7:04 p.m., Trooper Prause asked Chapple the name of his passenger, then said "I'm going to talk to [Shause] for a second, okay? Alright. Stand right here. That alright with you bud?" Chapple said "okay."

Shause told Trooper Prause they were on their way to Cedar Point for the night, and would spend the weekend in Kentucky for her family reunion. She did not mention Chapple's family reunion in Detroit.

### C. Search of Rental Car

Trooper Prause asked Chapple if he had guns, marijuana, Xanax, or Ecstasy. Chapple denied that he had a firearm or drugs, but also denied Trooper Prause's request to search the car. At 7:07 p.m., Chapple told Trooper Prause he could "call the dog."

At 7:08 p.m., Trooper Prause called for the canine unit. The dog began searching the car at 7:45 p.m., and she alerted on the trunk.

A search of a duffle bag in the trunk resulted in the seizure of cough syrup with codeine, and an unloaded firearm. OxyContin pills were found stuffed in a shoe.

### D. Magistrate Judge's Findings

Chapple seeks to suppress the evidence obtained in the search. He argues that: (1) the initial traffic stop was improper; (2) the traffic stop was extended beyond what was reasonably necessary to issue a traffic citation; (3) the traffic stop was extended without reasonable suspicion of further criminal activity; and (4) the dog alert was too unreliable to constitute reasonable suspicion to search the car.

The Magistrate Judge recommends that Chapple's motion be denied. She says: (1) the traffic stop was proper because Trooper Prause had probable cause to believe Chapple committed a traffic violation; (2) the purpose of the traffic stop ended when Trooper Prause told Chapple he was "good to go"; (3) after the traffic stop ended, Trooper Prause initially engaged in consensual conversations with Chapple and Shause; (4) when Trooper Prause told Chapple he was calling for the canine unit, the encounter escalated to a stop under *Terry v. Ohio*, 392 U.S. 1 (1968); (5) Trooper Prause had reasonable suspicion to conduct the *Terry* stop; (6) the *Terry* stop was sufficiently limited in time; and (7) the Government established probable cause for a

3

search of the car because the dog was reliable.

   E.   **Chapple's Objections**

Chapple objects to the Magistrate Judge's findings. He says: (1) the traffic stop was improper; (2) Trooper Prause did not engage in consensual conversations with Chapple and Shause before he called for the canine unit; (3) Trooper Prause's conversations with Chapple and Shause before he called for the canine unit, but after the traffic stop ended, amounted to a *Terry* stop; (4) Trooper Prause did not have reasonable suspicion to justify the *Terry* stop; (5) the *Terry* stop was not sufficiently limited in time; and (6) the dog was unreliable.

**III.   APPLICABLE LAW AND ANALYSIS**

   A.   **Traffic Stop**

"[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth Amendment]." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

Trooper Prause's decision to conduct a traffic stop is reasonable and complies with the Fourth Amendment guarantee against "unreasonable" searches and seizures, if he had probable cause to believe Chapple committed a traffic infraction. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (citing *Prouse*, 440 U.S. at 659 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*)). Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Trooper Prause testified at the evidentiary hearing on January 12, 2010 that when traveling at 70 mph, a car should be seven car lengths behind the car in front. Trooper Prause said Chapple's rental car was a car length and a half behind the car in front of him, which is a violation of the motor vehicle code. Trooper Prause said he saw Chapple's rental car from a "pretty far distance continually right behind the vehicle [in front of him] at the same distance at the same pace."

Chapple says there was a short distance between his rental car and the car in front of his because the driver of the car in front slammed on her brakes, and he had to slam on his brakes.

While Chapple's explanation for why there was a short distance between his rental car and the car in front is plausible, the Court finds Trooper Prause had reasonable grounds to believe Chapple committed a traffic violation. His belief that Chapple was tailgating was supported by the fact that he watched Chapple's rental car travel close to the car in front for a "pretty far distance."

It appears that both Trooper Prause and Chapple had credibility issues; Trooper Prause falsely told Chapple that his traffic violation was captured on videotape. However, Chapple testified at the evidentiary hearing on January 15, 2010, that he lied to Trooper Prause as well.

**B.     Expansion of the Traffic Stop**

Chapple says Trooper Prause violated his Fourth Amendment right when he talked to Shause after the traffic stop ended. According to Chapple, the interaction between Trooper Prause and Chapple was not consensual, and Trooper Prause did not have reasonable suspicion to expand the traffic stop.

"So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostick*, 501 U.S. at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567 (1988)). Trooper Prause's subjective intent in detaining Chapple is irrelevant so long as his intent was not conveyed to Chapple in a way that resulted in Chapple believing he was not free to leave. *See United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 n.6 (1980)).

While Trooper Prause told Chapple to remain by his patrol car while he talked to Shause, based on the totality of the circumstances, the Court finds there was no seizure when Trooper Prause asked Chapple if he could talk to Shause; a reasonable person would have felt free to leave after the traffic stop ended. Trooper Prause calmly asked Chapple if he could talk to Shause; Chapple gave Trooper Prause permission to talk to Shause; when Trooper Prause asked to talk to Shause, Chapple was having a friendly conversation with Trooper Prause about his vacation in Brazil; Trooper Prause was alone; he did not brandish a weapon; and, he did not make intimidating movements. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (examples of circumstances that might indicate a seizure would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the

6

individual, or the use of language or tone or voice indicating that compliance with the officer's request might be compelled).

Because there was no seizure before Trooper Prause called for the canine unit, Trooper Prause did not need reasonable suspicion to extend the traffic stop by talking to Shause.

### C. *Terry* Stop

After Trooper Prause talked to Shause, he told Chapple he could either consent to search of his rental car, or Trooper Prause would call a canine unit. At this point, the encounter escalated to a *Terry* stop.

"Once a consensual encounter escalates to the point where the individual is 'seized,' the police officer must have a reasonable suspicion of criminal activity to justify a *Terry* stop . . . in order for the seizure to comply with the Fourth Amendment." *Campbell*, 486 F.3d at 954. "Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (2001) (citing *Terry*, 392 U.S. at 21). The Court uses a "totality of the circumstances" analysis to determine whether Trooper Prause formed the requisite reasonable, articulable suspicion during the traffic stop. *Smith*, 236 F.3d at 588. In determining whether Trooper Prause acted reasonably, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

Trooper Prause says he had reasonable suspicion to believe drugs were in

7

Chapple's rental car based on: (1) Chapple and Shause's inconsistent stories about their travel plans; (2) Chapple's nervousness; (3) the fact that the rental car was clean and went through an expensive detailing process; (4) the overwhelming smell of air freshener, cologne, or perfume coming from the inside of the car; (5) Trooper Prause's belief that the rental car may have been stolen; and (6) the increase in people transporting prescription drugs from Detroit to Kentucky.

### 1. Inconsistent Travel Plans

Inconsistent travel plans can form the basis for reasonable suspicion, if the inconsistencies contain an indicia of untruthfulness that is particularly suspicious in the mind of a reasonable police officer. *See United States v. Townsend*, 305 F.3d 537, 543 (6th Cir. 2002).

The Court agrees with Chapple that he and Shause could have been talking about two different family reunions.

However, Chapple and Shause's stories about their travel plans varied significantly. Chapple testified they were on their way to Kentucky, and then would spend the weekend at Cedar Point; Shause testified they were on their way to Cedar Point (which closed in approximately three hours from when the traffic stop occurred), and would spend the weekend in Kentucky.

This factor is entitled to weight in the reasonable-suspicion calculation.

### 2. Nervousness

After reviewing the videotape, the Court finds Trooper Prause's conclusion that Chapple exhibited nervousness during the traffic stop not credible. Chapple appeared

calm and comfortable with the Trooper Prause.

The Court gives no weight to Trooper Prause's belief that Chapple was nervous.

### 3. The Rental Car Was Clean and Went Through an Expensive Detailing Process

The Court gives no weight to Trooper Prause's belief that the rental car was clean and went through an expensive detailing process. A clean rental car can be indicative of innocent behavior, and there is no evidence that Chapple spent a lot of money to have the car detailed. In support of his assertion that the car was detailed, Trooper Prause only testified that there was wheel protectant on the tires, which is typically done at most car washes.

### 4. Overwhelming Smell of Air Freshener, Cologne, or Perfume

Chapple's argument is that the overwhelming smell of air freshener, cologne, or perfume does not support Trooper Prause's reasonable suspicion that Chapple had drugs in the car, because he knew about the overwhelming smell before he told Chapple he was "good to go."

The Court disagrees.

Trooper Prause could not have smelled the inside of the car until he talked to Shause after the traffic stop ended. When Trooper Prause initiated the traffic stop, Chapple immediately exited the car and went to Trooper Prause's patrol car, which means Trooper Prause did not have an opportunity to smell the inside of the car before he talked to Shause.

More importantly, the Court looks to the totality of the circumstances to determine whether Trooper Prause had reasonable suspicion to believe drugs were in Chapple's

9

rental car. See Smith, 236 F.3d at 588.

This factor is entitled to weight in the reasonable-suspicion calculation.

### 5. Rental Car May Have Been Stolen

The Court gives no weight to Trooper Prause's belief that the rental car may have been stolen; this is not a specific and articulable fact as to why Trooper Prause thought Chapple had drugs in his rental car.

### 6. Increase in People Transporting Prescription Drugs from Detroit to Kentucky

While traveling between a drug source city to a drug destination city is not inherently suspicious, See United States v. Urrieta, 520 F.3d 569, 576 (6th Cir. 2008), Trooper Prause testified that his experience taught him there was a pattern of prescription pills leaving Detroit for southern states.

This factor is entitled to weight in the reasonable-suspicion calculation.

### 7. Court's Finding

The Court disagrees with the Magistrate Judge's conclusion that the expensive cleaning process, Trooper Prause's belief that the rental car may be been stolen, and Chapple's nervousness, created reasonable suspicion.

However, the Court finds the inconsistent travel plans; the overwhelming smell of air freshener, cologne, or perfume; and, the fact that Trooper Prause's experience taught him that people transport prescription pills from Detroit for southern states, was sufficient to create the requisite reasonable, articulable suspicion to conduct a Terry stop.

### D. Duration of the Traffic Stop

Although Trooper Prause had reasonable suspicion to detain Chapple for investigation, his investigation matured into an arrest or seizure that required probable cause, if the investigation occurred over an unreasonable period of time. *See United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 1997). "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly[.]" *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (citation omitted). There is no rigid time limit on the lawfulness of a *Terry* stop. *United States v. Winfrey*, 915 F.2d 212, 217 (6th Cir. 1990).

Here, Trooper Prause asked Chapple for consent to search the car on more than one occasion, noting that a search of the car would be quicker than waiting for the canine unit. Chapple did not give consent. Therefore, the canine unit became the quickest way for Trooper Prause to dispel his suspicion that Chapple had drugs in the car. While the canine unit arrived approximately 37 minutes after the *Terry* stop began, Trooper Prause diligently pursued this avenue. He asked someone twice how far away was the canine unit. Once the canine unit arrived, the dog sniff was conducted immediately.

This length of time is not unreasonable. *See United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (the police had reasonable suspicion to detain the defendant for the 30-45 minutes it took the police to bring the dog to the scene).

### E. Reliability of the Drug-Sniffing Dog

"In order for a dog's alert to support a determination of probable cause, 'the training and credibility of the dog must be established.'" *United States v. Torres-Ramos*,

11

536 F.3d 542, 554 (6th Cir. 2008) (quoting *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994)).

Chapple says the reliability of the dog is questionable; the Michigan State Police used a dog that was not trained to detect the presence of OxyContin pills.

The Court disagrees.

The dog handler, Deputy Jeremy Peters, testified at the evidentiary hearing that the dog had been certified in tracking drug work, obedience, bike work, article searches, and area searches since 2007. She was never decertified. While the dog was only trained on marijuana, heroin, and cocaine, Deputy Peters testified that OxyContin has the same derivatives as heroin, the dog has found OxyContin pills during prior searches, and there is a possibility that the dog alerted to a remnant of an odor that humans cannot smell. Chapple does not offer evidence to dispute Deputy Peters testimony.

The Court finds the dog was reliable. The Government established probable cause to search the rental car. *See United States v. Diaz*, 25 F.3d 392, 393 (6th Cir. 1994) ("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance") (citing *United States v. Knox*, 839 F.2d 285, 294 n.4 (6th Cir. 1988)).

## IV.   CONCLUSION

The Court **ADOPTS** the Magistrate Judge's R&R, with the exception of her conclusion that the expensive cleaning process, and Trooper Prause's belief that the rental car may be been stolen, created reasonable suspicion.

Chapple's motion is **DENIED**.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 16, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 16, 2010.

s/Carol A. Pinegar
Deputy Clerk